UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QIONG-LING HE,<br><br>    Plaintiff,<br><br>v.<br><br>TODD LYONS, et al.,<br><br>    Defendants. | Case No. 3:25-cv-10639-JSC<br><br>**ORDER RE: PRELIMINARY INJUNCTION** |

Petitioner, who is originally from China, has lived in the United States for six years. For the last five of these years she has been under an order of supervision which requires her to regularly check-in with Immigration and Customs Enforcement (ICE). She filed this habeas petition and a motion for a temporary restraining order (TRO) seeking to enjoin Defendants from detaining her absent prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 2.[1]) The Court granted the TRO and set a briefing schedule on the now pending motion for preliminary injunction. (Dkt. Nos. 4, 9.) After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the February 5, 2026 hearing, and GRANTS the preliminary injunction.

**BACKGROUND**

Petitioner is a thirty-three-year-old native and citizen of China who has resided in the United States since 2019. (Dkt. No. 1 ¶ 31.) She entered the United States without inspection and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

was apprehended by immigration officials, detained, and referred for a credible fear interview. (*Id.* at ¶ 32.)  The asylum officer found Petitioner had a reasonable possibility of past or future persecution based on her fear of returning to China on account of her Christian faith. (*Id.* at ¶¶ 32, 33.)  She appeared before an Immigration Judge, and on February 4, 2020, the Immigration Judge issued a removal order which Petitioner did not appeal. (*Id.* at ¶ 34.)  ICE subsequently released Petitioner on an order of supervision and she has complied with all conditions of the order including periodic check-ins. (*Id.* at ¶ 35.)  Petitioner has a work authorization and works part-time at a Chinese restaurant.  (*Id.* at ¶ 52; Dkt. No. 14 at 10.)  Petitioner is also the caregiver for her United States citizen spouse who was recently diagnosed with cancer. (Dkt. No. 1 at ¶ 46; Dkt. No. 14 at 10.)

On December 12, 2025, Petitioner received a text message directing her to report to ICE on December 15. (Dkt. No. 4.)  Petitioner's counsel contacted ICE to inquire about its intention to re-detain her at the check-in given recent reports people across the country who were called in for check-ins had been arrested and detained by ICE at the check-ins. (Dkt. No. 1 at ¶¶ 4-5.)  Counsel did not receive a response and thus filed the underlying habeas petition and TRO seeking to enjoin Defendants from re-detaining her absent prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 2.)  The Court granted the TRO and set a briefing schedule on the preliminary injunction.  (Dkt. No. 4.)  The parties thereafter stipulated to an extended briefing schedule and that the TRO would remain in effect until the preliminary injunction was heard. (Dkt. No. 9.)  The preliminary injunction is now fully briefed. (Dkt. Nos. 13, 14.)

**DISCUSSION**

**A.     Jurisdiction over the Habeas Petition**

As a threshold matter, the government contends the Court lacks jurisdiction over the habeas petition because Petitioner does not meet the "in custody" requirement as (1) she does not seek release from any present custody, and  (2) she does not challenge the terms of her order of supervision, and instead, "seeks an injunction to prevent her *future* arrest and detention."  (Dkt. No. 13 at 4-5 (emphasis in original).)

A court may grant habeas corpus relief to any individual "in custody in violation of the

2

Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has "very liberally construed the 'in custody' requirement." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). This liberal construction provides "[a] person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

The court in *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235 (C.D. Cal. Aug. 26, 2025), recently considered the identical argument in a factually analogous case and concluded:

> [Petitioner] is subject to several "restraints not shared by the public generally[,]" and is thus in custody within the meaning of Section 2241. *See id*. Upon her release from physical immigration detention, Sun was ordered "placed under supervision and permitted to be at large under [several] conditions[.]" (Order of Supervision.) These conditions include requirements that [Petitioner] regularly report to in-person check-ins with ICE, inform ICE before travelling outside of California for more than 48 hours, and provide ICE written information of any change in address or employment 48 hours prior to any such change. (*Id*.) A violation of these, or any other condition of her release, can result in Sun being taken into physical custody and being criminally prosecuted. (*Id*. at 28.) Such conditions "significantly confine and restrain [Petitioner's] freedom[,]" and she is thus in custody for the purpose of federal habeas corpus jurisdiction. *See Jones*, 371 U.S. at 243.

*Id*. at *3. So too here. Petitioner's order of supervision provides she cannot travel outside California for more than 48 hours without providing notice, must provide notice of any change of address or employment within 48 hours, must consent to a physical or mental examination upon request, must appear for regular check-ins, and violation of any of the terms of the order of supervision may subject her to fine, detention, or prosecution. (Dkt. No. 1-1 at 10.) Given these restraints, Petitioner is in custody for purposes of federal habeas jurisdiction. *See Sun*, 2025 WL 2730235 at *3 (collecting cases finding "jurisdiction over habeas corpus petitions and related motions seeking to enjoin the government from re-detaining petitioners at in-person check-in appointments with immigration authorities.").[2]

---

[2] To the extent the government relies on *J.P. v. Santacruz*, No. 8:25-CV-01640-FWS-JC, 2025 WL 2633198, at *2 (C.D. Cal. Aug. 27, 2025), for the contrary conclusion, the Court respectfully

3

B.     **Preliminary Injunction Factors**

To obtain a preliminary injunction, Petitioner must establish (1) she is "likely to succeed on the merits," (2) she is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [her] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

1.     **Likelihood of Success/Serious Legal Questions**

"Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693; *see also Trump v. J.G.G*., 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out

---

disagrees with the court's reasoning in that case for the reasons stated here.

of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention.").

Petitioner likewise has a protected liberty interest in remaining out of custody as she has been since October 2020. She has a job, United States citizen spouse with a serious illness, no evidence of a criminal record, and there is no suggestion she has not complied with the conditions of her release. The government nonetheless insists Petitioner has no liberty interest because the Supreme Court has previously found a period of detention of six months to be "presumptively reasonable" and she was only detained for 66 days prior to being released on an order of supervision; that is, she cannot challenge her detention until she has been detained for a total of six months. (Dkt. No. 13 at 6 (quoting *Zadvydas*, 533 U.S. at 701).) This argument conflates the duration of confinement and Petitioner's underlying liberty interest. *Zadvydas* concerned "the length of permissible detention, not what process is necessary to protect non-citizens' liberty interest when the government seeks to return them to custody." *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *4 (N.D. Cal. Aug. 21, 2025) (rejecting similar argument). The deprivation of freedom from custody "is a 'grievous loss' that can be taken away only upon review at a hearing before a neutral arbiter, regardless of whether government agents otherwise have statutory authority to re-detain an individual." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). *Zadvydas* neither "overrules th[is] reasoning [n]or otherwise provides the government with carte blanche to re-detain noncitizens without any process so long as the detention lasts under three months." *Alva* 2025 WL 2419262 at *4.

This Court joins those like *Alva* that have held petitioners have a substantial liberty interest in remaining out of custody under an order of supervision. *Alva*, 2025 WL 2419262, at *3 ("even when ICE has the initial discretion to detain or release noncitizens, after those individuals are released from custody, they have a protected liberty interest in remaining out of custody."); *see also Huang v. Albarran*, No. 1:25-CV-01308 JLT EPG, 2026 WL 145631, at *8 (E.D. Cal. Jan. 20, 2026) (collecting cases finding "when a non-citizen subject to a final order of removal is

5

released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest"); *Sun*, 2025 WL 2730235 at *5–6 (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator).

To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest, the Court applies the three-part test established in *Matthews v. Eldridge*, 424 U.S. 319 (1976). This framework requires a court to consider:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. Each of these factors weighs in Petitioner's favor.

First, as noted above, Petitioner has a significant liberty interest in remaining free from detention after being out of custody for more than five years, having married a United States citizen, and having secured employment. *See, e.g.*, *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life"); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Second, "the risk of an erroneous deprivation of liberty is high where, as here, the petitioner has not received any bond or custody redetermination hearing." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up). Civil immigration detention is supposed to be nonpunitive and permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government offers no evidence Petitioner's detention

would serve either purpose.

Finally, there is no countervailing government interest which would support conducting a bond hearing only *after* Petitioner has been detained, rather than before. *See Morrissey*, 408 U.S. at 483 ("the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] ... [y]et, the State has no interest in revoking parole without some informal procedural guarantees."). The government has not articulated a legitimate interest supporting arresting Petitioner without a pre-detention hearing. Instead, it refers generally to "administrative and resource burdens" frustrating its ability to carry out detention and removal actions. (Dkt. No. 13 at 9.) "In immigration court, custody hearings are routine and impose a minimal" cost." *Singh*, 803 F. Supp. 3d at 1048 (cleaned up). "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

In sum, each of the *Matthews* factors favor Petitioner and she has demonstrated, as a minimum, serious legal questions regarding her claim that the Due Process Clause entitles her to a bond hearing before an immigration judge prior to any re-arrest or detention.

### 2. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief. While Petitioner is currently out of ICE custody as a result of the Court's TRO order, there is no reason to believe the government will not immediately seek to detain her as soon as the TRO expires. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Unconstitutional deprivation of liberty satisfies the burden of irreparable harm.

### 3. Balance of Hardships and the Public Interest

Lastly, the balance of the equities and the public interest, which merge in this case because

7

the government is the opposing party, tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Specifically, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up).

The only interest asserted by the government is in the "application of immigration laws the Supreme Court has long reecogonized [sic]." (Dkt. No. 13 at 10.) But the only potential injury the government faces is a "short delay" in detaining Petitioner if it "ultimately demonstrates to a neutral decisionmaker" her detention is necessary to prevent flight or danger to the community. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025). The government provides no explanation as to how holding a pre-detention bond hearing would interfere with the enforcement of its immigration laws. The Court thus concludes the balance of hardships tips sharply in Petitioner's favor.

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's request for a preliminary injunction. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and a pre-detention hearing during which a neutral decisionmaker must consider whether Petitioner is either a danger to the community or flight risk such that her physical custody is required. This Order shall remain in effect until further order of the Court. The government does not request, and the Court declines to require, a security.

The parties shall meet and confer and, within 14 days of the date of this order, propose a schedule for resolving the remainder of this case or a stipulation that the reasoning in this order warrants granting the petition and entering judgment.

**IT IS SO ORDERED.**

Dated: February 3, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

8